UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ZAYD RASHID,

                    Plaintiff,

          -against-                          01 Civ. 10996 (DAB)
                                             MEMORANDUM & ORDER
KEVIN McGRAW, DDS, Sullivan
Correctional Facility, ROBERT
McARDLE, DDS, State Dental Director,
WILLIAM GRIFFIN, DDS, Regional
Coordinator, in their individual and
official capacities,

                    Defendants.
----------------------------------------X
DEBORAH A. BATTS, United States District Judge.

     Plaintiff Zayd Rashid brings this pro se action against

Defendants Kevin McGraw ("McGraw"), Robert McArdle ("McArdle")

and William Griffin ("Griffin") (collectively "Defendants").

Plaintiff asserts two claims against Defendants based on

inadequate dental treatment he received while he was incarcerated

at Sullivan Correctional Facility.  Plaintiff's first claim is

based on 42 U.S.C. § 1983 ("§ 1983"); his second claim sounds in

negligence under New York State law.

     Defendants in this action are licensed dentists, employed by

the New York State Department of Correctional Facilities

("DOCS").  Defendants are being sued in both their individual and

official capacities.

     Defendants have moved for summary judgment pursuant to Fed.

R. Civ. P. 56.  They seek dismissal of the claims against them on

the grounds that: (1) the claims are procedurally barred by the applicable statute of limitations and because Plaintiff failed to exhaust administrative remedies; (2) Plaintiff's constitutional claim fails to establish infliction of cruel and unusual punishment in violation of the Eighth Amendment; (3) negligence is not a cognizable claim under § 1983; (4) Defendants cannot be sued for negligence; and (5) Defendants are protected from liability pursuant to the doctrine of qualified immunity.

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

## I.   BACKGROUND

During the period relevant to this civil action, Plaintiff was incarcerated at various New York State correctional facilities.  At the time he initiated this action, Plaintiff was at Attica Correctional Facility.  Plaintiff is currently an inmate at Otisville Correctional Facility.  The dental treatment at issue in this action occurred while Plaintiff was at Sullivan Correctional Facility in Fallsburg, New York.  (Compl. ¶ 2.)

Defendant McGraw is a dentist employed by the New York State Department of Correctional Services.  He was previously placed at

Sullivan Correctional Facility.[1]  Defendant Griffin is employed
by DOCS as a regional dental coordinator.  Defendant McArdle is
the State Dental Director for DOCS with offices in Albany, New
York.  (Id. ¶¶ 3-5.)

Plaintiff has suffered from periodontal disease since the
mid-1980's.  (Id. ¶ 13.)  Periodontitis, like gingivitis, is a
serious infection of the gum area, that, if left untreated, can
lead to tooth loss.[2]  As the disease progresses, gums separate
from the teeth, forming pockets (spaces between the teeth and
gums) that become infected.  Pockets deepen as the disease
progresses and more gum tissue and bone are destroyed.

Plaintiff initially had problems with his upper teeth, and
repeatedly sought treatment for his upper teeth from various
dentists in DOCS, not including any of the Defendants in this
action.  By 1994, Plaintiff had lost all of his upper teeth.
(Id. ¶¶ 14-18.)

Plaintiff filed a dental malpractice suit in the New York
Court of Claims in 1994 with respect to the denial of proper care

---

[1] McGraw is currently placed at Mid-Orange Correctional
Facility.  (Defs.' Answer ¶ 3.)

[2] The Parties do not provide the Court with a formal
definition of periodontitis.  The Court's definition is taken
from the website for the American Academy of Periodontology,
found at http://www.perio.org/consumer/2a.html.

for his upper teeth.  According to Plaintiff, this claim resulted in a favorable verdict.  (Id. ¶ 19.)  On May 9, 1995, Plaintiff filed a federal claim alleging deliberate indifference by the dentists who had been responsible for the care of his upper teeth.  (Id. ¶ 20.)

Approximately one month later, Plaintiff, while at Sullivan Correctional Facility, began experiencing symptoms of pain, soreness and bleeding in his lower teeth and sought treatment from Defendant McGraw.  (Id. ¶ 21.)  Previously, Plaintiff had been seen by two dentists, Dr. Katz and Dr. Hussain.  In 1992, Dr. Katz recommended that problems with Plaintiff's lower teeth should be addressed.  (Rashid Aff. at Ex. A.)  In 1993, Dr. Hussein recommended a full mouth curettage.[3]  (Id. at Ex. B.)

Plaintiff requested treatment from the facility for the pain in his lower teeth.  The Parties agree that Plaintiff was treated by Defendant McGraw in 1994 and 1995.  The Parties also agree that Plaintiff was seen by a hygienist four times in 1996, and had nine dental visits with either Defendant McGraw or the hygienist in 1997, including one where upper wisdom teeth were removed.  Defendant Griffin examined Plaintiff in December, 1997 and found that there was no basis for an appointment with a

_____

[3] Curettage is a procedure whereby necrotic tissue is removed from around the tooth.  (See Rashid Aff. at Ex. D.)

periodontist.  Plaintiff then had five dental visits with the hygienist in 1998, including a visit when seven periapical x-rays were taken of Plaintiff's lower mouth.  In the following year, 1999, Defendant had four dental visits, three with a hygienist and one with Dr. Magidson.  In all these visits, except the final one with Dr. Magidson, Plaintiff was given cleanings and scalings (removal of plaque with a sharp instrument), and x-rays were also taken.  (Defs.' 56.1 Statement ¶¶ 16(g)-(h); Pl.'s 56.1 Statement ¶¶ 16(g)-(h).)

According to Plaintiff, the visit with Dr. Magidson was only arranged at the insistence of Plaintiff before he considered any settlement with the defendants in the federal action filed in 1995.  (Pl.'s 56.1 Statement ¶ 26.)  Dr. Magidson recommended surgery.  (Compl. ¶ 61.)  At some point in 2000, Defendant was transferred from Sullivan Correctional Facility to Woodbourne Correctional Facility.  After he was transferred, Plaintiff underwent three periodontal surgeries.  (Id. ¶ 62.)

Plaintiff filed a grievance on February 9, 2001, while at Lakeview Correctional Facility, regarding DOCS' deliberate indifference to the care and treatment of his lower teeth dating back to 1994.  (Adlerstein Aff. at Ex. F.)  According to Plaintiff, this grievance was fully exhausted by him on April 8, 2001, when the Central Office Review Committee ruled that

compensatory damages were not available through the grievance process and that Plaintiff's dental needs were being properly addressed. (Compl. ¶¶ 9-12.)

Subsequently, Plaintiff filed this action against Defendants in both their individual and official capacities, alleging a violation of his Eighth and Fourteenth Amendment rights, as well as a state law negligence claim. Plaintiff seeks $500,000.00 in compensatory damages and $75,000.00 in punitive damages.

## II.  DISCUSSION

Defendants move for summary judgment, seeking dismissal of all claims against them. Defendants argue that the Plaintiff's § 1983 claim is time-barred by the applicable statute of limitations, and that Plaintiff failed to exhaust administrative remedies prior to bringing his claim. Defendants alternatively argue that dismissal is warranted because Plaintiff has failed to allege a deprivation of his Eighth Amendment right against cruel and unusual punishment. Defendants also argue that the § 1983 claim cannot be asserted against them because they are shielded by qualified immunity. With regard to the state law negligence claim, Defendants argue that they cannot be sued for negligence in their individual or official capacities.

## A.  Legal Standard

Summary judgment may be granted only when there is no
genuine issue of material fact remaining for trial and the moving
party is entitled to judgment as a matter of law.  Fed. R. Civ.
P. 56(c); see also, e.g., Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 247-248 (1986); Corselli v. Couglin, 842 F.2d 23, 25
(2d Cir. 1988).

Under Fed. R. Civ. P. 56(c), "[t]he judgment sought shall be
rendered forthwith if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law."  The Supreme Court has interpreted this to
mean that, "[T]he plain language of Rule 56(c) mandates the entry
of summary judgment, after adequate time for discovery and upon
motion, against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at
trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

As a general rule, "the court is to draw all factual
inferences in favor of the party against whom summary judgment is
sought, viewing the factual assertions . . . in the light most
favorable to the party opposing the motion".  Rodriguez v. City

of New York, 72 F.3d 1051, 1061 (2d Cir. 1995); see also Consarc

Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572 (2d Cir.

1993).  All ambiguities and all inferences drawn from the

underlying facts must be resolved in favor of the party

contesting the motion, and all uncertainty as to the existence of

a genuine issue for trial must be resolved against the moving

party.  LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171

(2d Cir. 1995).  As is often stated, "[v]iewing the evidence

produced in the light most favorable to the nonmovant, if a

rational trier could not find for the nonmovant, then there is no

genuine issue of material fact and entry of summary judgment is

appropriate."  Binder v. LILCO, 933 F.2d 187, 191 (2d Cir. 1991).


B.  Exhaustion of Remedies

        Defendants argue that Plaintiff's claims should be

dismissed for failure to exhaust because he brought his grievance

after the remediation (treatment of his lower teeth) had taken

place.  "In short, plaintiff did not pursue the avenue prescribed

by law, which would have given defendants the opportunity to

remediate, until after the remediation took place."  (Defs.' Mem.

Law at 22.)  Defendants do not contest that the grievance brought

by Plaintiff was fully exhausted in the sense that all

administrative steps required by Plaintiff, technically, were

8

taken.

The grievance that Plaintiff filed requested that "the deliberate indifference to [his] dental needs cease immediately. All recommendations of the periodontist be followed through immediately. That [he] be compensated for [his] injuries." (Adlerstein Aff. at Ex. F.) Plaintiff's grievance was denied. He then appealed the denial and the Inmate Grievance Program Central Office Review Committee "advised that the grievance process is not the proper avenue to address [Plaintiff's] request for compensatory damages" and that "[Plaintiff's] dental needs are currently being addressed. (Id.)

As the Inmate Grievance Program noted, the grievance process could not give Plaintiff the remedy he sought. Plaintiff was not seeking another surgery in his grievance. The remedy he sought in the grievance was compensation for the deliberate indifference shown to him by Defendants from the period of 1994 to 2000, and assurance that his periodontist's advice would be followed. In such a context, Defendants' argument, that Plaintiff failed to exhaust because he filed a grievance after the remediation, is peculiar, particularly since Plaintiff did give Defendants the chance to remediate for years before he received the surgeries. Plaintiff sent numerous memoranda to Defendants, informing them of the symptoms he was experiencing with regards to his lower

teeth.  Plaintiff informed Defendants in those memoranda that a previously recommended curettage might be necessary.  Defendants responded by giving Plaintiff teeth cleanings and other examinations but failed to address Plaintiff's chronic dental condition.  It was only after Plaintiff insisted on seeing a specialist, as a condition of the settlement he reached in his 1995 federal lawsuit, that Plaintiff was able to receive the proper treatment.

It is clear to the Court that Plaintiff exhausted his administrative remedies.  Accordingly, Defendants' Motion for Summary Judgment for failure to exhaust is DENIED.


C.    Statute of Limitations

Defendants argue that Plaintiff's claims are untimely because he filed his Complaint in October, 2001, allegedly more than three years after the applicable accrual date.

The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injuries occurring in the state in which the appropriate federal court sits.  Owens v. Okure, 488 U.S. 235, 251 (1989); Connolly v. McCall, 254 F.3d 36, 40-41 (2d Cir. 2001).  In New York State, the applicable statute of limitations for personal injuries is three years. N.Y. C.P.L.R. § 214(5) (McKinney's 1990).  The accrual date for a

§ 1983 claim, on the other hand, is governed by federal law.  <u>See</u> <u>Ormiston v. Nelson</u>, 117 F.3d 69, 71 (2d Cir. 1997); <u>Eagleston v. Guido</u>, 41 F.3d 865, 871 (2d Cir. 1994), <u>cert.</u> <u>denied</u>, 516 U.S. 808 (1995).  Generally, the statute of limitations begins to accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action.  <u>See</u> <u>Cornwell v. Robinson</u>, 23 F.3d 694, 703 (2d Cir. 1994) (citing <u>Singleton v. New York</u>, 632 F.2d 185, 191 (2d Cir. 1980)); <u>Eagleston</u>, 41 F.3d at 875.  In a case where the suit charges that the defendants inflicted cruel and unusual punishment on the plaintiff by refusing to treat his medical condition while the plaintiff is in prison, the refusal continues "for as long as the defendants had the power to do something about the plaintiff's condition, which is to say until he [leaves] the jail."  <u>Heard v. Sheahan</u>, 253 F.3d 316, 318 (7th Cir. 2001); <u>see also</u> <u>Shomo v. City of New York</u>, No. 03 Civ. 10213, 2005 WL 756834, at *4-5 (S.D.N.Y. Apr. 4, 2005) (extending the doctrine of continuing violation to situation where inmate alleged deliberate indifference to inmate's serious medical needs).

Defendants argue that Plaintiff's last official letter of complaint, dated July 2, 1998, (Adlerstein Aff. at Ex. G.), and his deposition testimony that the pain in his lower mouth was "on and off" from 1994 to 2000, (Pl.'s Dep. at 46), demonstrate that

the accrual date for Plaintiff's claim is actually in July, 1998.
Hence, according to Defendants, because Plaintiff filed this
action on October 19, 2001, more than three years after the
accrual date, his claims are barred by the three-year statute of
limitations.

Defendants refused to treat Plaintiff's condition for the
entire time he was at Sullivan Correctional Facility.  He made
his first request for medical attention to his lower teeth in
1994, and continued to do so until he was finally seen by Dr.
Magidson in 1999.  Dr. Magidson recommended surgery, but
Plaintiff was not given those surgeries until he was transferred
to Woodbourne Correctional Facility in 2000.

Under federal law, Plaintiff's claim that Defendants were
deliberately indifferent to his medical condition by failing to
treat his condition, accrued when he left Sullivan Correctional
Facility in 2000.  It was until then that Defendants had the
power to treat the condition, yet did not do so.  Plaintiff filed
this action in October, 2001, well within the three-year statute
of limitations.  Defendants' Motion for Summary Judgment on the
ground that Plaintiff's claims are time-barred is therefore
DENIED.

D.  State Law Negligence Claim

    Defendants argue that Plaintiff's state law negligence claim

must be dismissed because it is precluded by N.Y. Correction Law

§ 24 and barred by the Eleventh Amendment.

    The Eleventh Amendment provides that "[t]he judicial power

of the United States shall not be construed to extend to any suit

in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or

Subjects of any Foreign State."  U.S. CONST. amend. XI.  As a

result of this restraint on federal jurisdiction, a state may be

sued in federal court only when it consents in express terms to

be sued or when Congress unequivocally states its intent to

abrogate the state's immunity.  See Green v. Mansour, 474 U.S.

64, 68 (1985).  Neither circumstance exists here.  Claims against

DOCS employees in their official capacities are suits against the

state.  Since a suit for money damages against a state employee

in his official capacity is barred by the Eleventh Amendment,

Plaintiff's state negligence claim against Defendants in their

official capacities is DISMISSED.

    Under N.Y. Correction Law § 24, tort claims against prison

officials can only be brought in the Court of Claims for the

State of New York.  The statute provides in pertinent part:

    1. No civil action shall be brought in any court

13

of the state, except by the attorney general on
behalf of the state, against any officer or
employee of the [Department of Correctional
Services], in his personal capacity, for damages
arising out of any act done or the failure to
perform any act within the scope of the employment
and in the discharge of the duties by such officer
or employee.

2. Any claim for damages arising out of any act
done or the failure to perform any act within the
scope of the employment and in the discharge of the
duties of any officer or employee of the [Department
of Correctional Services] shall be brought and
maintained in the court of claims as a claim against
the state.

The Second Circuit has held that the existence of such a

provision bars consideration of claims such as Plaintiff's

negligence claim in federal court. See Baker v. Coughlin, 77 F.3d

12, 15-16 (2d. Cir. 1996).

Plaintiff's claims against Defendants clearly arise from

acts within the scope of their employment.  Therefore, Plaintiff

may not sue the Defendants in their individual capacities for

negligence in federal court.

Accordingly, Defendants' Motion for Summary Judgment on the

state law negligence claim is GRANTED.


E.   Section 1983 Claim

Defendants argue that dismissal of Plaintiff's § 1983 claim

is necessary because Plaintiff cannot establish infliction of

cruel and unusual punishment, and alternatively that they are
entitled to qualified immunity.

    1.  Standard for § 1983 deliberate indifference claim

    Section 1983 of Title 42, United States Code, enables a
plaintiff to bring a cause of action against a "person who, under
color of any statute, ordinance, regulation, custom, or usage, of
any State . . . subjects, or causes to be subjected, any citizen
of the United States . . . to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws."
42 U.S.C. § 1983.  Thus, a plaintiff bringing a § 1983 action
must demonstrate that "the conduct complained of was committed by
a person acting under color of state law . . . [and that] this
conduct deprived a person of rights . . . secured by the
Constitution or laws of the United States."  <u>Greenwich Citizens</u>
<u>Committee, Inc. v. Counties of Warren and Washington Indus.</u>
<u>Development Agency</u>, 77 F.3d 26, 29-30 (2d Cir. 1996) (quoting
<u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981)) (internal quotations
omitted).  Section 1983 is not in itself "a source of substantive
rights," but instead "provides a method for vindicating federal
rights elsewhere conferred."  <u>Patterson v. County of Oneida,</u>
<u>N.Y.</u>, 375 F.3d 206, 225 (2d Cir. 2004) (quoting <u>Baker v.</u>
<u>McCollan</u>, 443 U.S. 137, 144 n.3 (1979)).

One such source of federal rights is the Eighth Amendment of the Constitution, which states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In Estelle v. Gamble, the Supreme Court held that prison employees' "deliberate indifference [to an inmate's] serious medical needs" violates the inmate's Eighth Amendment rights and is actionable under § 1983. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A plaintiff pursuing a § 1983 claim for deliberate indifference to serious medical needs must meet a two-prong standard by demonstrating a serious medical need (the objective prong) and by showing that the defendant possessed the requisite culpable mental state (the subjective prong). See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

a. Serious medical need

The objective prong of the deliberate indifference standard requires a showing of a "sufficiently serious" medical need. Hathaway, 99 F.3d at 553 (internal quotations and citations omitted).

A serious medical need is generally characterized by "a condition of urgency that may result in degeneration or extreme pain" or "the unnecessary and wanton infliction of pain."

Chance, 143 F.3d at 702 (citation omitted). "A cognizable claim regarding inadequate dental care . . . can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities." Id., 143 F.3d at 703 (internal citations omitted).

Defendants argue that a serious medical condition has not been demonstrated by Plaintiff because he was consistently treated and medicated to relieve pain in his lower mouth, that the pain was at most episodic, and his injury did not restrict him in his daily duties.

Defendants also argue that Plaintiff was clearly exaggerating the seriousness of his condition and the extent of the deterioration of his lower teeth. In McArdle's Affidavit, McArdle states that Dr. Magidson's conclusion that Plaintiff had "generalized 4 to 6 mm pocketing with bleeding," (McArdle Aff. at Ex. B), does not constitute a deterioration of Plaintiff's condition since a 1993 examination by a periodontist, Dr. Weinstein, revealed similar pocket depths. (McArdle Aff. ¶ 5.)

Defendants' assertion that Plaintiff's pain did not keep him from his daily activities, and thus does not constitute a serious medical condition, demonstrates a disregard for the record before the Court. In his numerous memoranda to the dental staff at

Sullivan Correctional Facility, Plaintiff complained of severe pain in lower gum, bleeding, soreness, and inflammation.  (Rashid Aff. at Exs. C, G, H, I, J, K, L, M, and N.)  Plaintiff stated in his testimony that his pain was "on and off . . . sometimes for a long period of time."  (Pl.'s Dep. at 46.)  He admits that his pain was episodic, but this fact does not undermine the seriousness of his condition when the condition did flare up, which is documented in his written memoranda to DOCS dental staff.  In addition, although he may have been consistently treated by the dental staff, his pain continued to persist and did not abate.

Furthermore, without more than the partial records submitted without explanation by Defendants, it is not possible to determine whether Plaintiff's condition from 1993 to 1999 did not degenerate, and therefore does not constitute a "serious medical condition" that produces degeneration or extreme pain.  Accordingly, the Court finds that whether Plaintiff's dental pain amounted to a serious medical condition is a genuine issue of material fact that cannot be resolved by the facts before the Court at this time.

b.  Deliberate indifference

To satisfy the subjective prong of the deliberate

18

indifference standard, Plaintiff must prove that the prison
official was aware of, and consciously disregarded, the
prisoner's medical condition.  <u>Chance</u>, 143 F.3d at 703; <u>see</u> <u>also</u>
<u>Farmer</u>, 511 U.S. at 837.  The prison official "must both be aware
of facts from which the inference could be drawn that a
substantial risk of serious harm exists, and he must also draw
the inference."  <u>Chance</u>, 143 F.3d at 702 (quoting <u>Farmer</u>, 511
U.S. at 837).  While purposefully refusing to treat a serious
medical condition constitutes deliberate indifference, it need
not be the official's purpose to harm the inmate; "a state of
mind that is the equivalent of criminal recklessness" is
sufficient.  <u>Hathaway</u>, 37 F.3d at 553.

A physician's mere negligence in treating or failing to
treat a prisoner's medical condition does not implicate the
Eighth Amendment and is not properly the subject of a § 1983
action.  <u>Estelle</u>, 429 U.S. at 105-06; <u>Chance</u>, 143 F.3d at 703.
"Medical malpractice does not become a constitutional violation
merely because the victim is a prisoner."  <u>Estelle</u>, 429 U.S. at
106.  Thus, a physician who "delay[s] . . . treatment based on a
bad diagnosis or erroneous calculus of risks and costs" does not
exhibit the mental state necessary for deliberate indifference.
<u>Harrison</u>, 219 F.3d at 139.  Likewise, an inmate who disagrees
with the physician over the appropriate course of treatment has

19

no claim under § 1983 if the treatment provided is "adequate."
<u>Chance</u>, 143 F.3d at 703.

Defendants argue that they were not deliberately indifferent to Plaintiff's medical needs. According to Defendants, they provided Plaintiff with "sustained and constant medical care to assist in relieving his pain and in treating his lower mouth." (Defs.' Mem. Law at 26.) Defendants characterize their treatment as a "conservative course of dental care" and argue that though there was a difference of opinion between Plaintiff and medical personnel, Defendants made a good faith professional effort to assist Plaintiff.

Plaintiff concedes that he was given dental care. His argument is not that Defendants denied him any medical care; rather it is that Defendants were deliberately indifferent to his medical condition and denied him adequate treatment.

It is troubling to the Court that Defendants followed their "conservative course of dental care" for five years, during which Plaintiff continually made requests to see dental personnel due to severe pain and bleeding in his lower teeth. It is also troubling to the Court that Defendants seem to be implying that surgery did not become necessary until Dr. Magidson's examination of Plaintiff in 1999, when Defendants themselves argue that the pocket depths diagnosed by Dr. Magidson in 1999 were the same as

those diagnosed in 1993.

In addition, Plaintiff notes that in his previous lawsuit against DOCS, concerning his upper teeth, the Magistrate Judge had rejected a similar argument submitted by the defendants in that case: "The gravamen of [Plaintiff's] complaint is that defendants' deliberate indifference stems from their alleged denial and interference with his course of recommended treatment - e.g., the 1988 and 1989 recommendations for surgery – and not that he was denied care in general." <u>Rashid v. Hussain</u>, No. 95 Civ. 676, 1997 WL 642549, at \*10 (N.D.N.Y. Oct. 15, 1997). The situation in Plaintiff's previous federal case is remarkably similar to the one presented here. Plaintiff has submitted evidence, namely in the form of two diagnoses made in 1992 and 1993 by two different dentists, Dr. Katz and Dr. Hussain, (Rashid Aff. at Exs. A and B), which appear to recommend more rigorous treatment than the various cleaning and scalings recommended and conducted by Defendants for close to six years. Plaintiff repeatedly notified dental personnel at Sullivan, including Defendants, of his symptoms, and of the recommendations that were made in 1992 and 1993.

Defendants knew of Plaintiff's extensive dental history and of the recommendations made in 1992 and 1993, yet continued their "conservative course of treatment." It is clear that this course

of treatment was not adequate, as Plaintiff continued to suffer pain and finally had to undergo three separate periodontal surgeries.  The Court therefore finds that there is a genuine issue of material fact whether Defendants were deliberately indifferent to Plaintiff's dental concerns.

2.  Qualified Immunity

Defendants argue that they are entitled to summary judgment on the § 1983 claim because they are shielded from liability by the doctrine of qualified immunity.

"Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official."  Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982) (quoting Gomez v. Toledo, 446 U.S. 635 (1980)).  Such a defense "serves important interests in our political system.  It protects government officials from liability they might otherwise incur due to unforeseeable changes in the law governing their conduct."  Sound Aircraft Services, Inc. v. Town of East, 192 F.3d 329, 334 (2d Cir. 1999). Qualified immunity also serves the important public interest of "protecting public officials from the costs associated with the defense of damages actions . . . [including] the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from accepting public

positions." Crawford-El v. Britton, 523 U.S. 574, 590 at fn.12 (1998).  Qualified immunity is not merely a defense; it is also "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

Qualified immunity shields a defendant from liability "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Johnson v. Newburgh Englarged Sch. Dist., 293 F.3d 246, 250 (2d Cir. 2001); Brosseau v. Haugen, 125 S.Ct. 596, 599 (2004) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted"); see also Harlow, 457 U.S. at 818-19.

"[A] court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation."  Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).  Determining the constitutional question first serves two purposes:  it spares the defendant of unwarranted demands and liability "customarily imposed upon those

defending a long drawn-out lawsuit" and also "promotes clarity in the legal standards for official conduct, for the benefit of both the officers and the general public."  Id.

If a deprivation of a constitutional right has been alleged, a court must determine whether the constitutional right was clearly established by determining:  (1) if the law was defined with reasonable clarity, (2) if the Supreme Court or the law of the Second Circuit affirmed the rule, and (3) whether a reasonable defendant would have understood from existing law that the conduct was unlawful.  See Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998).  "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 634, 640 (1987).  The specific action in question does not have to have been explicitly deemed unlawful by the courts, but its unlawfulness in light of pre-existing law must be apparent.  Id.  "An overly narrow definition of the right can effectively insulate the government's actions by making it easy to assert that the narrowly defined right was not clearly established."  LaBounty v. Coughlin, 137 F.3d 68, 73-74 (2d Cir. 1998).  At the same time, the right cannot be defined too broadly, as that would convert the rule of qualified immunity into one of virtually unqualified liability.  Id.

Even if a court finds that the right is clearly established, "defendants may nonetheless establish immunity by showing that reasonable persons in their position would not have understood that their conduct was within the scope of the established protection." LaBounty, 137 F.3d at 73 (2d Cir. 1998). "[R]easonableness is judged against the backdrop of the law at the time of the conduct . . . . [T]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau, 125 S.Ct. at 599.

The Court has already concluded that Plaintiff has adequately alleged a deprivation of a constitutional right and now turns to the question of whether the Eighth Amendment right in Plaintiff's § 1983 claim was clearly established at the time of the alleged violation.

Defendants argue that they could reasonably have believed their conduct did not violate any clearly established law since there is no constitutional right to be provided treatment according to an inmate patient's own opinions or desires.

Defendants misunderstand the right at issue. Plaintiff's complaint does not allege a simple difference of opinion between him and Defendants on what dental treatment was appropriate. Plaintiff is alleging a violation of his right to adequate medical treatment.

Although, as Defendants argue, there is no case with the exact facts alleged here, Defendants knew of their obligation to provide adequate medical treatment to an inmate.  There is no question that that right is clearly established.

The record indicates that Defendants received specific information about Plaintiff's injury and were on notice of recommendations by other dental professionals who believed such recommendations would adequately address Plaintiff's lower mouth condition.  Given Plaintiff's dental history and the many memoranda  he sent to Defendants and other complaints made by Plaintiff, it was not reasonable for Defendants to deny periodontal treatment, x-rays, or not follow the 1992 and 1993 recommendations of other dental professionals, particularly since Plaintiff continued to complain of pain, bleeding, soreness for the next several years after those recommendations were made.

Defendants claim that they should not have been on notice because of the very different conditions in Plaintiff's upper and lower mouth and that the constant treatment given to Plaintiff shows they could not have been deliberately indifferent to Plaintiff's serious medical need.  However, Plaintiff has introduced evidence that shows the symptoms in his lower mouth were similar to those in his upper mouth.  Furthermore, as this Court has previously observed, Plaintiff is not challenging the

quantity of dental visits he had from 1994 to 2000, but the adequacy of treatment and responsiveness to his symptoms of periodontal disease. Viewing the disputed facts in the light most favorable to the Plaintiff, the Court concludes that a reasonable person in Defendants' positions would have taken more reasonable measures to ensure that Plaintiff's constitutional rights were not violated. Therefore, Defendants' motion for summary judgment based on the doctrine of qualified immunity is DENIED.

### III. CONCLUSION

For the foregoing reasons, Defendants' summary judgment motion is GRANTED on Plaintiff's state law negligence claim and is DENIED on Plaintiff's § 1983 claim.

On the remaining cause of action under 42 U.S.C. § 1983, the Court sets the following pretrial submission dates:

- Joint Pre-Trial Statement ("JPTS"), Requests to Charge and Proposed Voir Dire are to be filed no later than August 21, 2006;

- Memoranda of Law addressing those issues in the JPTS are also to be filed no later than August 21, 2006;

- Responses to the Memoranda of Law are to be filed no later than September 18, 2006;

27

All submissions shall be in accordance with the Individual

Practices of Judge Deborah A. Batts, as amended October 7, 2005.

See Individual Practices, available at

http://www.nysd.uscourts.gov/Individual_Practices/Batts.pdf.

     SO ORDERED.

Dated:    New York, New York
            _____, 2006

                                                                                       
                                                  **DEBORAH A. BATTS**
                                        **United States District Judge**

All submissions shall be in accordance with the Individual

Practices of Judge Deborah A. Batts, as amended October 7, 2005.

See Individual Practices, available at

http://www.nysd.uscourts.gov/Individual_Practices/Batts.pdf.

    SO ORDERED.

Dated:    New York, New York
           May 18, 2006

                                DEBORAH A. BATTS
                     United States District Judge